**LYNCH et al. v. UNITED STATES.**

No. 13171.

United States Court of Appeals Fifth Circuit.

May 25, 1951.

Rehearing Denied July 7, 1951.

Frank M. Gleason, Rossville, Ga., for appellants.

J. Ellis Mundy, U. S. Atty., Atlanta, Ga., Raymond W. Martin, Sp. Asst. to U. S. Atty., LaGrange, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circut Judges.

HOLMES, Circut Judge.

This appeal is from a sentence for a violation of Section 242, Title 18, of the United States Code. Appellants and 10 others were first indicted, on August 3, 1949, in an indictment containing two counts, the first alleging a violation of Section 241, and the second a violation of Section 242, of Title 18 of said code. They were arraigned, entered pleas of not guilty, and were tried before a jury. The jury were discharged by the judge after it became apparent that they could not agree on a verdict, and a mistrial was declared. On February 1, 1950, appellants and eight others were again indicted on three counts, the first charging a conspiracy in violation of Section 371 of said title; the second and third charging a violation of said Section 242. All the defendants filed a plea of former jeopardy, also a motion to dismiss the indictment because it failed to charge a crime against the laws of the United States. The plea was denied and the motion to dismiss overruled. The defendants then entered pleas of not guilty, were tried jointly, and found not guilty on counts one and three of the indictment. All were found not guilty on count two, except appellants Lynch and Hartline, sheriff and deputy sheriff, respectively, of Dade County, Georgia, each of whom was sentenced to imprisonment for one year and to pay a fine of $1,000.

On this appeal, we are concerned only with the conviction of Lynch and Hartline under count two of the indictment, which in substance charges that Lynch, as sheriff, and Hartline, Bleakley, and McCauley, his deputies, acting under color of law, statutes, ordinances, and regulations, of the State of Georgia and the County of Dade, did willfully and knowingly subject, and cause to be subjected, certain named negroes to the deprivation of rights, privileges, and immunities, secured to them by the Fourteenth Amendment of the Constitution of the United States, viz.: not to be denied equal protection of the laws; to be immune while in custody, control, and under arrest, from illegal assault, battery, and torture; not to be subjected to trial by ordeal; not to be subjected to cruel and inhuman treatment or punishment while in custody, control, or under arrest; but each of whom was entitled to the rights and privileges of trial in accordance with law, and by due process of law; and, if found guilty, to be sentenced and punished in accordance with law.

The indictment alleges that the appellants arrested, detained, and held under their custody and control, certain named negroes, while the other named defendants, and many unknown persons who were hooded, robed, and disguised, in Ku Klux Klan regalia, and were acting in concert with the named defendants, caused a cross to be burned; that they handed over the named negroes to the other non-officer defendants and to the unknown hooded and robed persons, all of whom detained and carried away the named negroes and beat them without a trial or due process of law; that the appellants, acting under color of the law and authority aforesaid, willfully and knowingly failed and refused to afford equal protection of the law to the named negroes, and failed and refused to afford them any protection of the law whatsoever.

Appellants contend that there is not substantial evidence to support the jury's verdict; that the trial court erred in overruling their plea of former jeopardy, and in refusing to sustain their motion to dismiss court two of the indictment.

The former trial of the appellants and the other defendants named in the indictment lasted over five weeks, and resulted in a mistrial. A new indictment was returned, which predicated the conspiracy count upon Section 371 of Title 18, rather than Section 241, which this court had held inapplicable as to the conspiracy count alleged in the indictment in the case of Williams, v. United States, 5 Cir., 179 F.2d 644, which was affirmed by the Supreme Court on April 23, 1951. 340 U.S. 849, 71 S.Ct. 77. Appellants' plea of former jeopardy did not complain that the jury on the former trial had not been given ample time in which to reach a verdict, because that jury deliberated more than 48 hours without a vote being changed. When the mistrial was declared, the Gov-

ernment was at liberty to try the appellants again on the same indictment or to obtain a new indictment. A mistrial in a case is no bar to a subsequent trial of defendants.

The appellants assign many reasons to support their contention that the trial court erred in refusing to sustain their motion to dismiss count two of the indictment, but we do not find sufficient merit in any of them to warrant us in granting a reversal of this case. Under the new rules of criminal procedure, it is only necessary to charge the offense in the language of the statute so as to put the defendants on notice of the accusation against them. In this case the indictment does that, in addition to describing in detail the acts which transpired whereby the victims in this case were deprived of their constitutional rights in violation of the statute. The indictment carefully and properly alleges the willfulness necessary to constitute a violation of Section 242 of said Title 18. The federal constitutional rights involved under count two of this indictment are embraced in the portion of the Fourteenth Amendment that reads as follows: "Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The rights involved in the foregoing portion of the Fourteenth Amendment are these: the rights of persons under state arrest not to be deprived of their personal security (which is embraced within the word "liberty") except in accord with due process of law, and also the rights of such persons to equal protection of the laws. "Equal protection of the laws" in turn includes the right to be tried and punished in the same manner as others accused of crime are tried and punished, the right to protection from injury from the officers having them in charge, and the right of protection by the officers from injury sought to be inflicted upon them as prisoners from third persons. Only as to the last named right does this case present any feature that has not already been adjudicated.

In Screws v. United States, 325 U.S. 91, 106, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495, the Supreme Court stated: "Likewise, it is plain that basic to the concept of due process of law in a criminal case is a trial—a trial in a court of law, not a 'trial by ordeal.' Brown v. Mississippi, 297 U.S. 278, 285, 56 S.Ct. 461, 465, 80 L.Ed. 682 * * *. Those who decide to take the law into their own hands and act as prosecutor, jury, judge, and executioner plainly act to deprive a prisoner of the trial which [the Constitution of the United States] guarantees him. * * *" Thus we see that an officer of the law who, having a prisoner in his custody, unlawfully assaults and beats the prisoner, thereby substituting trial by ordeal for trial by due process of law, if acting with willful intent, may be found guilty under said Section 242 of Title 18. Persons under arrest are entitled equally with other persons under arrest to a trial by due process, and when found guilty, they are subject to the same punishments. A prisoner unlawfully beaten by an arresting officer is denied the right of due process of law and also the right of equal protection of the laws. Screws v. United States, supra; Crews v. United States, 5 Cir., 160 F.2d 746.

We are of the opinion that "equal protection of the law" relates, not only to the right of protection from the officer himself, but also relates to the right of protection due the prisoner by the arresting officers against injury by third persons. There was a time when the denial of equal protection of the laws was confined to affirmative acts, but the law now is that culpable official inaction may also constitute a denial of equal protection. McCabe v. Atchison, T. & S. F. Ry. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169; State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208. Mr. Justice Rutledge, in his special concurrence in the Screws case, on page 126 of 325 U.S., on page 1047 of 65 S.Ct., 89 L.Ed. 1495, stated that among the rights protected by Section 242 is the right of protection from mob action incited or shared in by state officers, and the right of protection from the failure

to furnish police protection on proper occasion or demand. It may be that failure by inaction to discharge official duty may constitute a denial of equal protection of the laws. See Screws v. United States, supra citing 325 U.S. on page 127, 65 S.Ct. on page 1048 the case of Catlette v. United States, 4 Cir., 132 F.2d 902, 907, wherein the court said: "And since the failure of Catlette to protect the victims from group violence or to arrest the members of the mob who assaulted the victims constituted a violation of his common law duty, his dereliction in this respect comes squarely within the provisions of 18 U.S.C.A. § 52."

We realize that, by adjudicating that "equal protection of the laws" relates to the right of protection due the prisoner by the arresting officer against injury by third persons, we are creating a situation where the courts should proceed with extreme caution and care, because it would be manifestly unfair to law enforcement officers, as well as being clearly erroneous, to rule that such officers are guilty of a violation of Section 242 merely because prisoners are taken from their custody and whipped or otherwise mistreated. That is not the law. We think that it must appear beyond a reasonable doubt that the officer's dereliction of his duties, whether of omission or commission, sprang from a willful intent to deprive his prisoner or prisoners of any or all of the rights hereinabove mentioned.

The indictment in this case is not predicated upon any alleged assault or battery of the prisoners by the officers themselves. It is based upon the alleged surrender of the prisoners by the officers to a group of persons, disguised in the regalia of the Ku Klux Klan, to be beaten, and who were beaten, by the Klansmen. The court below instructed the jury on the duties of sheriffs under the common law and the law of Georgia. The officers' defense, that they surrendered the prisoners to the mob because of threats made to them and in the belief that any other course of action would result in even more violence and injury, was submitted by the court in its instructions to the jury. The jury were very carefully and properly charged that, in order to find the appellants guilty, they had to determine whether the appellants turned their prisoners over to the robed and hooded persons with a willful intent to deprive the victims of their constitutional rights. They were further charged that the officers were not being tried for false arrest or for breach of official duty, and that they could be found guilty only if it was proven beyond a reasonable doubt that they delivered the prisoners in their charge to the hooded mob with a willful intent that the prisoners would be beaten by the mob. The court's charge was full, fair, and able; it followed with accuracy the law as laid down by the Supreme Court in Screws v. United States, supra. We find no part of the charge that was unjustly prejudicial to the appellants.

The jury rendered a verdict of guilty against only Lynch and Hartline. There is substantial evidence to support the verdict, and from the evidence the jury could properly have found the following: There was an organizational drive being conducted in northeast Georgia by the Ku Klux Klan in 1948. Sheriff Lynch and his deputies attended various meetings of the Klan. At one meeting, some remarks were made about some negroes creating a disturbance on Hooker Hill. Plans were then made for the burning of some crosses. Notices of one or more of these meetings were sent to defendants Lynch and Hartline. The latter personally aided in the building of one of the crosses, and in its transportation to Hooker, where it was erected and burned near the residence of Mamie Clay, a negro woman, on the night of April 2, 1949. On this same night, Sheriff Lynch and his deputies arrived at Hooker at about the same time as the Klansmen arrived. While good cause existed for the arrest of one negro, who was drunk on the highway, no grounds were shown for the arrest of the others who were called out from Mamie Clay's house. At the time of their arrest, one of the men appealed to Sheriff Lynch for protection, but the Sheriff only walked

away. The officers consented to these ne-
groes being placed in cars and carried for a
short distance from Mamie Clay's house,
where they were taken from the cars, one at
a time, and beaten. Following this, the
Klansmen returned to Trenton, as did also
these officers, where they mixed and min-
gled together. No arrests were made at
that time, nor attempted to be made. While
several witnesses testified that they were
approached by the Sheriff as to becoming
members of a posse, none of them ever
received any definite instructions, and
no posse was formed. After ceremonies
at the public meeting in Trenton, the
Klansmen proceeded to Signal Mountain
for a second cross-burning, and the ap-
pellants followed them to that point.
Again no arrests were made, no persons
in disguise were identified by them, and no
license numbers of automobiles were ob-
tained. These facts and circumstances pre-
sented a clear picture of complete cooper-
ation between the appellants and the Klans-
men, which amply justified the jury in
finding that the prisoners were not taken
from the appellants by threat or intimida-
tion, but were voluntarily surrendered to
the Klansmen to be beaten by them. It
was evidently inconceivable to the jury
that the officers in this rural community
did not at least recognize some of these
disguised men and condone their acts.

It was clearly a question for the
jury whether or not appellants were act-
ing under color of law within the meaning
of said Section 242, and whether these of-
ficers knew that a person arrested for an
offense had the constitutional right to a
trial under the law. The jury were war-
ranted in finding from the evidence be-
yond a reasonable doubt that appellants
willfully failed to accord these victims the
opportunity for such a trial, and in fact
turned them over to this mob to suffer
trial by ordeal, with the conscious purpose
and willful intent of depriving them of
their constitutional right to a legal trial.
The appellants were charged with, and
tried for, willful and intentional depri-
vation of the victims' constitutional rights.
The evidence was sufficient to sustain the
verdict, and the judgment appealed from

should be affirmed. See Williams v. Unit-
ed States, 340 U.S. 849, 71 S.Ct. 77, affirm-
ing a conviction under Section 20 of the
Criminal Code, now Section 242, Title 18,
U.S.C.

Affirmed.