**UNITED STATES v. HUNTER.**

No. 14832.

United States Court of Appeals, Fifth Circuit.

July 21, 1954.

Rehearing Denied Aug. 20, 1954.

Warren Olney III, Asst. Atty. Gen., Arthur B. Caldwell, Sydney Brodie, Dept. of Justice, Washington, D. C., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

Tom Whitaker, Pat Whitaker, Tampa, Fla., James Whitehurst, Brooksville, Fla., Charles A. Savage, Ocala, Fla., Chester H. Ferguson, Tampa, Fla., Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellee.

Before STRUM, Circuit Judge, and DAWKINS and HOOPER, District Judges.

HOOPER, District Judge.

The indictment involved in this case charged Jesse W. Hunter, a State Attorney of Florida, with violation of 18 U.S.C.A. § 242, the civil rights involved being those of a negro State prisoner by the name of David Reese. On motion of defendant the trial judge dismissed the indictment as failing to charge a criminal offense and the Government appealed.

The alleged deprivation of civil rights arose out of proceedings in the Circuit Court, Fifth Judicial Circuit of Florida, in and for Hernando County. For some reason the record of the proceeding in the state court is contained in the record here, so this Court, in seeking to construe the meaning of the factual allegations in the indictment, is afforded the unusual advantage of having before it the facts upon which the indictment was predicated. A recital of these facts and circumstances will aid materially in the understanding of the indictment itself, hence will first be given.

Proceedings in the State Court

During the trial in the state court of Andrew Timmons, Willie Timmons and

David Reese charged with murder, the State having closed its case, counsel for David Reese moved for a verdict of acquittal for said defendant upon the ground of insufficiency of evidence to convict. Jesse W. Hunter, the State Attorney (defendant in the instant case, hereafter referred to as the State Attorney) at first opposed this motion, but upon reconvening of the court on the following day he conceded the evidence was insufficient, he moved the Court to direct a verdict of not guilty as to Reese, and requested that Reese be held for further prosecution as an accessory after the fact.

Counsel for David Reese responded: "I have nothing to say to that." Whereupon the Court granted the motion and instructed the Sheriff to hold David Reese until the State should have had time to prepare an information against him charging him as an accessory after the fact.

Subsequently, it having come to the attention of the trial judge that David Reese was still confined, a hearing was had before the trial judge, in the course of which the Court and defense counsel agreed that the order continuing the confinement of Reese "was a perfectly proper and not unusual order." It developed at this hearing that the matter of the confinement of Reese had not been called to the attention of the trial judge and the latter expressed strong disapproval of defense counsel for not bringing this matter to the attention of the Court, adding: "If you had called that to my attention I would have immediately ordered him released on anybody's request."

It also appeared from statements made at this hearing by counsel for Reese that neither Reese nor any member of his family had requested counsel to move for a release; racial tensions had existed locally; that the State Attorney and counsel discussed the matter on several occasions; that counsel left the matter up to the judgment of the State Attorney; that the latter suggested that they wait and see whether the Supreme Court would reverse the convictions in the original murder trial, as the State Attorney might need Reese as a witness.

The indictment against the State Attorney is in two parts. The first portion makes general allegations and conclusions which were based on the factual allegations in the latter part. The latter part of the indictment went into the factual phases of the matter, making allegations as to the trial of the murder case, the request of the State Attorney for the continued confinement of Reese, that "the said defendant wilfully caused the unlawful continued imprisonment of David McKinrick Reese and was at all times fully aware of the fact of the said imprisonment but took no action to effect the release of David McKinrick Reese until on or about February 28, 1952, nineteen months and eight days after the aforesaid incarceration, although well knowing at all times that no information or other legal accusation had been issued so as to justify the continued imprisonment of David McKinrick Reese."

(1) This indictment must stand or fall, depending on whether the indictment, given a reasonable interpretation, charges the State Attorney with the commission of acts which constitute a violation of 18 U.S.C.A. § 242. While the filing of a motion for bill of particulars by the defendant might have constituted a more orthodox method of clarifying any ambiguities,[1] it so happens in this case that the record of the proceedings in the state court, out of which proceedings arose the basis of this indictment, is contained in the present record. This Court is considering that record only to the extent that it illustrates the meaning of any vague or uncertain language in the indictment.

(2) Did the alleged willful failure of the State Attorney (after learning that the prisoner should not be continued in confinement) to apply to the trial judge

1. See United States v. Konovsky, 7 Cir., 202 F.2d 721, 726.

for an order to release the prisoner, constitute a violation of the provisions of 18 U.S.C.A. § 242?

The prisoner was being confined by order of the trial judge and no one except the trial judge, or another judge having jurisdiction over the matter in habeas corpus proceedings, could release him. The judge stated that he would have released the prisoner had anyone so requested, and we must assume that that is true.[2]

The prisoner himself during this period of some nineteen months apparently made no request of his jailer to intercede for him with the judge, nor did he write any note or letter to the judge requesting a release. His own counsel was fully aware of all of the circumstances but failed to take any action, for which he was severely reprimanded by the judge. It is not alleged that the State's Attorney did any act to prevent the prisoner, his counsel, or anyone else, from making application in behalf of the prisoner.

Counsel for the State Attorney insists that the prisoner's failure to seek a release was a waiver of his right to due process, which would exonerate the State Attorney. That raises a question which we do not need to decide. If the indictment alleges an offense against the State Attorney, we would hesitate to invoke a waiver against the prisoner; if it does not allege an offense, the matter of waiver would be immaterial.

We will assume for purposes of this decision that, despite the circumstances above outlined, the prisoner's continued confinement should be attributed to the inaction of the State Attorney. We must also assume, in order to uphold this indictment, that the willful failure of the State Attorney to request the Court to release the prisoner, would constitute a violation of the Civil Rights Statute.[3]

Having indulged, however, in the foregoing assumption there still remains this controlling question in the case, as to whether or not there rested upon the State Attorney by virtue of his office, a legal duty to perform.

The Civil Rights Statute was upheld by a divided court in the case of Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 1034, 89 L.Ed. 1495, as against the

---

2. We take cognizance of the fact that many state trial judges have adopted various methods to prevent prisoners from languishing in jail for long periods of time awaiting the filing of formal charges against them and the fixing of bail.

Some judges require that a list of such prisoners be presented at regular intervals, others require that all such prisoners be brought before the Court at regular intervals so that the Court may appoint counsel for them and let them be arraigned, plead and give bond.

3. The Government cites two cases in support of its position. In one of these, Catlette v. United States, 4 Cir., 132 F. 2d 902, 907, the Court stated:

"It is quite obvious in the instant case * * * that Catlette took very active and utterly unwarranted steps to subject his victim to affirmative indignities."

In the other case, Lynch v. United States, 5 Cir., 189 F.2d 476, the evidence showed that the sheriff and his deputy were engaged in a conspiracy with the mob and delivered prisoners to the mob to be beaten by the latter. In his book "Civil Rights in the United States," page 30, Dean Allison Reppy of New York Law School, makes this comment:

"It is now suggested that Section 20 (now 242) be expanded to include inaction of state officers in failing to prevent lynchings, such inaction being ratified by permanent failure to prosecute. This suggestion seems of doubtful validity."

The author cites several articles written on the subject by various scholars.

Section 242, 18 U.S.C.A., penalizes a state officer who "willfully subjects" any inhabitant to deprivation of federal rights. The word "subjects" implies some type of affirmative action upon the part of the officer. It is defined by Webster's New International Dictionary, 2nd Ed., as follows:

"Literally, to throw under, to cause to lie beneath or below; to make subjacent; * * * to cause to undergo; to submit (a thing or person) to the action or effect of something; to expose."

attack that the expression contained therein, " 'rights, privileges, or immunities, secured or protected by the Constitution and laws of the United States' ", was too vague when used in a criminal statute. While the court differed sharply on other questions, both the majority and the minority agreed that the right violated must be a right previously made so definite that a state officer would necessarily know that he was violating it. The majority opinion stated in part as follows:

> "The treacherous ground on which state officials—police, prosecutors, legislators, and judges— would walk is indicated by the character and closeness of decisions of this Court interpreting the due process clause of the Fourteenth Amendment. * * * The enforcement of a criminal statute so construed would indeed cast law enforcement agencies loose at their own risk on a vast uncharted sea. * * * The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning."

The very essence of the charge against the State Attorney is that he, for a considerable period of time, "took no action to effect the release" of the prisoner.

No statute of the State of Florida, no decision of its courts, nor any principle of the common law has been cited to us to indicate that the State Attorney was under a legal duty, by virtue of his office, to make application to the trial judge for release of this prisoner. That he was under a moral obligation under all the circumstances to do so, we would not doubt. Should we hold this indictment sufficient, however, and the case were tried to a jury, the trial judge would be under the necessity of instructing the jury as to the legal duties devolving upon the State Attorney at the time.

In all of the cases heretofore decided, in which the convictions of state officers have been upheld on the theory that they had violated their oath of office, their official duties were clearly defined by the trial judge in his instructions to the jury.[4]

Should the indictment be upheld in the instant case the trial judge would be utterly unable upon the trial to instruct the jury that the State Attorney, in failing to apply to the trial judge for a release of this prisoner, had breached any official duty resting upon the State Attorney under the laws of Florida. A verdict of guilty would of necessity depend upon the individual views of the jurors as to whether the State Attorney had acted rightly or wrongly. Such a ruling upon our part would cast this Civil Rights Statute back into the same morass of uncertainty from which the Supreme Court sought to rescue it. We rule therefore, that the indictment did not sufficiently allege a violation of Section 242, Title 18 U.S.C.A., and that the trial judge ruled correctly when he dismissed the indictment.

Judgment affirmed.

---

4. In the case of Catlette v. United States, 4 Cir., 132 F.2d 902, 907, supra, it is stated:

> "And since the failure of Catlette to protect the victims from group violence or to arrest the members of the mob who assaulted the victims constituted a violation of his common law duty, his dereliction in this respect comes squarely within the provisions of 18 U.S.C.A., § 52 (now 242)."

In the case of Lynch v. United States, 5 Cir., 189 F.2d 476, at page 480, supra, it was pointed out that the court below instructed the jury on the duties of sheriffs under the common law and the law of Georgia.