**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Cary STOKES, Defendant-Appellant.**

No. 74–1315.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1975.

---

Manley F. Brown, H. T. O'Neal, Jr., James D. Hudson, Macon, Ga., for defendant-appellant.

William J. Schloth, U. S. Atty., Macon, Ga., John F. Conroy, Washington, D. C., Ronald T. Knight, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before GODBOLD and MORGAN, Circuit Judges, and JOHNSON, District Judge.

LEWIS R. MORGAN, Circuit Judge:

Charles Cary Stokes brings this appeal from his conviction by a jury for viola-

tion of Title 18 U.S.C. § 242,[1] which makes criminal the willful deprivation of constitutional rights by any person, acting under color of law. We affirm.

## I.

At the time of the acts giving rise to his conviction, Stokes was employed as a police officer by the City of Macon, Georgia. On the night of July 10, 1973, Stokes and another Macon police officer were summoned to the lounge of a local inn where they arrested John Velpo Tucker on a charge of "plain drunk." Tucker, a field representative for a major oil company, was a resident of Florida who had traveled to Macon on a business trip. Both before his arrest at the lounge and afterwards in the custody of the police, Tucker was obstreperous and verbally abusive to the point of threats. However, he never made any overt attempts to carry out his threats to resist arrest and to inflict injury on his custodians. After Tucker was taken to the police station for booking, Stokes shoved Tucker down a flight of stairs, struck him with his hands and a nightstick, and threw him against a wall head first. After booking, Tucker was locked in the drunk tank. Early the next morning, Tucker was taken to a Macon hospital in a coma, where he was operated on for a fractured skull. He was still in a coma at the time of Stokes' trial six months later.

A one-count indictment charged Stokes with willfully striking and assaulting Tucker, an inhabitant of the state of Florida, and thereby willfully depriving him of the right not to be deprived of liberty without due process of law. The jury returned a verdict of guilty on January 16, 1974. Stokes was sentenced to six months imprisonment and five years probation.

## II.

Stokes has argued numerous grounds for the reversal of his conviction. Most of these involve alleged errors in the trial court's failure to instruct the jury in accordance with requests submitted by Stokes' counsel. The trial court, of course, has no obligation to adopt the language proposed·by counsel, as long as its charge, taken as a whole, correctly states the law. Locke v. United States, 166 F.2d 449, 451 (5th Cir. 1948), cert. denied, 334 U.S. 837, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948).

Stokes' primary objection is that the trial court erroneously stated the law in instructing the jury as to what constitutes a deprivation of liberty without due process. Stokes contends that the only constitutional right of which Tucker could have been deprived in this situation is his right to a courtroom trial; for a deprivation of due process to have occurred, he argues, Stokes' actions must be found to have constituted summary punishment of Tucker. Thus he contends there was fatal error in the trial court's instruction that a police officer's unlawful assault of a prisoner in his custody is a deprivation of liberty without due process of law, within the purview of 18 U.S.C. § 242.[2]

---

1. Title 18 U.S.C., § 242 provides:

   Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

2. On this point, the substance of the court's instructions was as follows:

   What do we mean, ladies and gentlemen, by liberty and due process of law? As stated before, the Fourteenth Amendment to the Constitution provides that no state shall deprive any person of his liberty without due process of law. The liberty of the individual which the Constitution thus secures and protects is not an absolute and unqualified freedom or privilege to do as one pleases at all times and under all circumstances, but is always subject to reasonable restraints, including, of course, such restraints as are imposed by law.

Stokes' interpretation of § 242 and the cases construing it is an oversimplification and an understatement of the constitutional rights of which one may not willfully deprive another without incurring criminal liability. The seminal case interpreting 18 U.S.C. § 242, and upon which Stokes relies, is Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). In Screws, the sheriff of Baker County, Georgia, with the assistance of two other law enforcement officers, arrested a Negro citizen of that state. They beat their prisoner to death with fists and a blackjack. The Court was faced with a strong challenge to the constitutionality of applying § 242 (then § 20 of the Criminal Code, 18 U.S.C. § 52) to the deprivation of due process rights, on the grounds that the due process clause lacked the specificity which is constitutionally mandated for criminal statutes. To preserve the statute's constitutionality, the Court held that § 242 requires as one element of the offense the specific intent "to deprive a person of a right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them." 325 U.S. at 104, 65 S.Ct. at 1037.

■ Ignoring the clear holding in Screws, Stokes apparently relies upon the Court's statement that in order to

> The prisoner named in this indictment, that is Mr. Tucker, in common with the defendant and all other persons living under the protection of our Constitution had the legal right at all times not to be deprived without due process of law of any liberty secured or protected by the Constitution or the laws of the United States.
>
> It is undisputed, ladies and gentlemen, that the prisoner in question was lawfully arrested out at the motel in question prior to the time and place of the alleged offense that is charged in this indictment, and he thus had already been deprived of certain of his liberties with due process of law, namely, his liberty to be free of arrest and to come and go without the restraint that resulted from his arrest. The prisoner had nonetheless other liberties of which he had not been deprived, among which was the liberty to be free from unlawful attacks upon the physical integrity of his person. It has always been the policy of the law to protect the physical integrity of every per-

convict the defendants, "it was necessary for [the jury] to find that petitioners had the purpose to deprive the prisoner of a constitutional right, e. g., the right to be tried by a court rather than by ordeal." 325 U.S. at 107, 65 S.Ct. at 1038.[3] Screws and other cases cited by Stokes, e. g., United States v. Delerme, 457 F.2d 156 (3d Cir. 1972); Koehler v. United States, 189 F.2d 711 (5th Cir. 1951); Pullen v. United States, 164 F.2d 756 (5th Cir. 1947); Crews v. United States, 160 F.2d 746 (5th Cir. 1947), did involve the right not to be subjected to summary punishment at the hands of law enforcement officers cloaked in the power of their official state position. However, there is no suggestion in any of these cases that in the factual context of police beatings and assaults the right to due process or the scope of § 242 is limited to a right not to be summarily punished or deprived of a trial by law. The argument that it is thus limited suggests that state officials can remove any beating of a prisoner, however brutal, from the realm of a constitutional violation merely by bringing the prisoner to trial, at least when the assault occurs in a pre-trial time frame.

■ To the contrary, Screws makes it perfectly clear that once a due process right has been defined and made specific

> son from unauthorized violation or interference. So the prisoner here, even while lawfully under arrest, had the right, under the Constitution, not to be deprived of this remaining liberty involving the physical integrity of his person without due process of law.

3. Stokes also relies upon Screws' statement that "The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States." 325 U.S. at 108–109, 65 S.Ct. at 1039. This is certainly true, for as the context of the quote demonstrates, such an action must be done under the color of law in order to rise to the level of a constitutional violation. Furthermore, the use of force must be unreasonable and unnecessary in order to constitute a deprivation of federally protected rights. Stokes does not contest that his actions were under color of law.

by court decisions, that right is encompassed by § 242. *Screws'* own language then negates the rationale of Stokes' position. The real question for decision, therefore, is whether the trial court's instructions described "a right which has been made specific . . . by decisions interpreting [the Constitution]." *Screws, supra*, 325 U.S. at 104, 65 S.Ct. at 1037.

■ We are mindful of the problem faced by the Supreme Court in *Screws*. We deal here with a criminal statute, and those who are prosecuted under it ought not to be forced to guess at the actions which it makes criminal. There are numerous cases, however, which support the proposition that one's right to be free from unlawful assault by state law enforcement officers when lawfully in their custody has been made a definite and specific part of the body of due process rights protected by the fourteenth amendment of the Constitution, so that a willful deprivation of that right comes within the purview of § 242.

In Lynch v. United States, 189 F.2d 476 (5th Cir. 1951), cert. denied, 342 U.S. 831, 72 S.Ct. 50, 96 L.Ed. 629, this court held that rights protected by the fourteenth amendment include: "the rights of persons under state arrest not to be deprived of their personal security (which is embraced within the word 'liberty') except in accord with due process of law," and "the right to protection from injury from the officers having them in charge." In *Lynch*, we affirmed a conviction under 18 U.S.C. § 242 of a sheriff and a deputy sheriff who arrested and held several Negroes, and then turned them over to a group of Ku Klux Klansmen who beat them. We held that the fourteenth amendment not only extends protection from injury at the hands of the state officers themselves, but also shelters the prisoner from the denial of protection owed him by the arresting officers when third persons seek to inflict injury. 189 F.2d at 479.

Furthermore, in United States v. Walker, 216 F.2d 683 (5th Cir. 1954), cert. denied, 348 U.S. 959, 75 S.Ct. 450, 99 L.Ed. 748, we reversed the dismissal of an indictment under § 242 which alleged that the defendant, a supervisor of a Florida prison camp, did "willfully, unlawfully, and wrongfully beat, bruise, wound, lacerate, cut, and injure the person and body" of one of his prisoners, thereby depriving him of certain Constitutional rights, "to-wit: the right to be secure in his person, and to be immune from illegal assault and battery by the defendant and by other persons under the defendant's direction and control, and the right not to be assaulted by the said defendant and by other persons under the defendant's control and direction, and the right and privilege not to be subjected to punishment without due process of law." 216 F.2d 683, n. 1.

■ In a slightly different procedural posture, Stokes has made an argument very similar to that of the accused prison official in *Walker*, namely, that his purpose or motive for beating Tucker is critical to the question of whether a § 242 offense was committed, and unless his manhandling of Tucker was done with the intent and for the purpose of inflicting punishment without benefit of a trial in a court of law, his actions do not amount to a deprivation of due process. However, as we said in *Walker*:

> [Defendant's] reliance, therefore, on the fact that in [United States v. Jones, 207 F.2d 785 (5th Cir. 1953)] the information stated the reasons for the alleged assault and the indictment in this case did not, will not do, for in each case the offense consists, not in the reason given by, or charged against, the offender for the unlawful action, the wilful deprivation under the color of state law of rights secured to prisoners by the Federal Constitution, but in the fact of the deliberate and wilful deprivation of such rights by the officer under such color. 216 F.2d at 684.

Another series of cases which bears on the question of whether the trial court's instructions described "a right which has been made specific . . . by decisions interpreting [the Constitution],"

*Screws, supra,* 325 U.S. at 104, 65 S.Ct. at 1037, has been decided under 42 U.S.C. § 1983, the civil counterpart to § 242. *See* Baldwin v. Morgan, 251 F.2d 780, 789 (5th Cir. 1958). The § 1983 cases lend additional support to our conclusion, for they have held that an unlawful assault by police or correctional officers of a prisoner in lawful custody may be grounds for a civil cause of action for the deprivation of constitutionally protected rights. Among them are: Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973) (failure of state prison employees and correctional officers to prevent unprovoked knife assault by one inmate on another); Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (assault of a pre-trial detainee by a correctional officer); Tolbert v. Bragan, 451 F.2d 1020 (5th Cir. 1971) (beating of a convicted federal prisoner by state jailers while in their custody to answer state criminal charges); Collum v. Butler, 421 F.2d 1257 (7th Cir. 1970) (unreasonable and unnecessary force used by police to restrain arrested person); Wiltsie v. California Department of Corrections, 406 F.2d 515 (9th Cir. 1968) (beating of inmate in state correctional facility after conviction); Morgan v. Labiak, 368 F.2d 338 (10th Cir. 1966) (unreasonable and unnecessary force used by municipal police officers in making arrest). In all of these cases it was the unreasonable, unnecessary or unprovoked use of force alone which was the alleged deprivation of a constitutional right.

■ This body of case law, extending back to our decision in *Lynch, supra,* has made it clear that the constitutional right to due process of law includes not only the right to be tried in a court of law for alleged offenses against the state, but also a right not to be treated with unreasonable, unnecessary or unprovoked force by those charged by the state with the duty of keeping accused and convicted offenders in custody. This aspect of due process has been made specific by court decisions and is thus within the purview of rights protected by the criminal sanctions of 18 U.S.C. § 242.

There was no error in the trial court's charge to the jury on this point.

## III.

■ Stokes also contends that the trial court erred in instructing the jury on the element of willfulness. Again he relies on *Screws, supra,* which construed "willfully" as "connoting a purpose to deprive a person of a specific constitutional right." 325 U.S. at 101, 65 S.Ct. at 1035. Stokes' request to charge was based on the following language from *Screws:*

> But in view of our construction of the word "willfully" the jury should have been further instructed that it was not sufficient that petitioners had a generally bad purpose. To convict it was necessary for them to find that petitioners had the purpose to deprive the prisoner of a constitutional right, e.g., the right to be tried by a court rather than by ordeal. 325 U.S. at 107, 65 S.Ct. at 1038.

At Stokes' trial, the court's instructions to the jury included the following:

> An act, ladies and gentlemen, is willfully done if it is done voluntarily and purposely with a specific intent to do something the law forbids, that is with bad purpose to disobey or disregard the law. The specific intent required to convict of this crime is the intent to deprive a person of a constitutional right.

The court reiterated the specific intent element in summing up its instructions. Since the trial court stated the specific intent requirement in unambiguous and correct terms, Stokes' argument must boil down to a complaint that the trial court did not specifically instruct that "it was not sufficient that [the defendant] had a generally bad purpose." *Screws, supra* at 107, 65 S.Ct. at 1038.

We cannot interpret the language from *Screws* which Stokes relies upon as having been intended by the Supreme Court to mandate a ritualistic charge to be used in instructing juries in § 242 cases. The significance of *Screws* is that it held that the specific intent to deprive a person of a constitutional right is an

essential element of a § 242 offense. The trial court must state the law correctly in its instructions, and it did so in this case. The fact that it did not use the exact words from *Screws* that Stokes' counsel requested is not grounds for reversal when the substance of the charge was correct and not subject to misinterpretation by the jury. Bacon v. Kansas City Southern Railway Company, 373 F.2d 515 (5th Cir. 1967).

Stokes has alleged numerous other errors in the trial court's charge, too numerous and too insubstantial for individual discussion. Some of his alleged errors involve requests to charge which are themselves erroneous, other alleged errors overlap what we have already discussed, and others border on the frivolous. We have read and considered carefully the entirety of the charge to the jury. Viewed as a whole, as it must be on appeal, the charge is a fair and accurate statement of the law. It was not erroneous. *See, e. g.*, Garrett v. Campbell, 360 F.2d 382 (5th Cir. 1966); Bacon v. Kansas City Southern Railway Company, 373 F.2d 515 (5th Cir. 1967).

## IV.

Stokes also contends that there was prejudicial error in the trial court's order that the names on the trial jury panel not be released until the morning of the trial, and in its ruling to exclude one of his witnesses from testifying on the grounds that her testimony was cumulative. Both of these rulings were within the discretion of the trial court and neither has been shown to be prejudicial.

■ As to the first, the district court's plan for the random selection of jurors, in implementation of 28 U.S.C. § 1863, provides, "the court may at any time or from time to time order generally, or with respect to any particular term or terms of court, that these names be kept confidential in any case where in the

court's judgment the interests of justice so require." [4]

Stokes contends that a ruling to seal the jury panel list in a given case should not be made except pursuant to a fact-finding hearing to determine whether the interests of justice require that the names be kept confidential. However, the standard set forth in the Jury Selection Act of 1968,[5] allowing the district court to keep jury panel names confidential "where the interests of justice so require," is deliberately broad, we believe, in order to vest wide discretion in the trial court. Stokes has made no showing that the district court used its discretion in an arbitrary manner. Thus we can find no prejudicial error in this ruling.

■ As for the matter of the trial court's ruling that the testimony of Ethel Reese, a defense witness, would be merely cumulative and that therefore she would not be allowed to take the witness stand, we note that the offer of proof shows that Miss Reese would have testified about the events and conduct of Mr. Tucker at the lounge prior to the arrival of Stokes. One of the government's witnesses and two of defendant's witnesses had already testified about this. Furthermore, and more importantly, what occurred at the lounge prior to Stokes' arrival is not material to the events which occurred later at the jail and formed the basis for the government's charge. The offer of proof does not sustain Stokes' contention that this ruling was prejudicial.

Neither individually nor cumulatively do Stokes' contentions of error in his trial amount to a showing that he was prejudiced by the rulings of the trial court. Therefore, the judgment of the district court is

Affirmed.

4. Nine required features of each United States district court's plan for random jury selection are set out in 28 U.S.C. § 1863(b), which provides: "Among other things, such plan shall . . . (8) fix the time when the names drawn from the qualified jury wheel shall be disclosed to parties and to the public.

If the plan permits these names to be made public, it may nevertheless permit the chief judge of the district court, or such other district court judge as the plan may provide, to keep these names confidential in any case where the interests of justice so require."

5. See n. 4, *supra.*