[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 07-15791

_____

D. C. Docket No. 05-00873 CV-J-33MCR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 15, 2008
THOMAS K. KAHN
CLERK

H.A.L.,
J.H.L.,
S.L.L.,
Minor children, by and through their
parents and next friends,
BRIAN JOSEPH LEWIS,
RACHEL DANETTE LEWIS,

                                        Plaintiffs-Appellees,

        versus

ED FOLTZ,
individually,
DEBORAH JONES,
individually,
VIRGINIA JORDAN,
individually,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 15, 2008)**

Before EDMONDSON, Chief Judge, and ANDERSON, Circuit Judge, and COHILL,* District Judge.

PER CURIAM:

Plaintiffs H.A.L., J.H.L., and S.L.L., minor children, filed through their parents and next friends a 42 U.S.C. § 1983 claim against Defendants Ed Foltz ("Foltz"), Deborah Jones ("Jones"), and Virginia Jordan ("Jordan"), employees with the Florida Department of Children and Families ("DCF"), in their individual capacities. Plaintiffs allege that Defendants violated the childrens' Fourteenth Amendment substantive due process rights to physical safety and to be free from an unreasonable risk of harm. Plaintiffs contend that Defendants, through deliberate indifference, failed to prevent child-on-child sexual abuse the children suffered while they were involuntarily in the custody of Florida's foster-care system.

Defendants appeal on interlocutory review the district court's denial of their motion to dismiss Plaintiffs' Third Amended Complaint on the basis of

_____

* Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

Defendants' qualified immunity. Based on the alleged facts, we conclude that Defendants knowingly subjected the children to a substantial risk of serious harm and exhibited deliberate indifference to the known risk: conduct already clearly established as unconstitutional. Accordingly, we affirm the district court's denial of Defendants' motion to dismiss based on qualified immunity.

BACKGROUND

Based on the complaint, the gist of Plaintiffs' cause of action is this contention: when faced with the known risk of child-on-child sexual abuse occurring in Plaintiffs' foster home, Defendants were deliberately indifferent to Plaintiffs' safety by doing nothing to guard against this known and significant risk. Plaintiffs suffered sexual abuse as a result. First, Defendants knowingly placed Plaintiffs in a home with another sexually aggressive child, but failed to implement a safety plan to protect the children. Then, after reports of child-on-child sexual abuse between other children in the home were made, Defendants

3

allowed Plaintiffs to remain in the home without taking steps to guard Plaintiffs' safety. The following facts are alleged.[1]

### A.      What Defendants Knew Before Placing Plaintiffs in the Shick Home

Edwin and Donna Shick (the "Shicks") were frequent foster parents. At any given time, multiple foster children lived with the Shicks and their natural children. Around June 1997, eleven-year-old R.S. was placed in the Shick foster home.[2]

Around October 1997, Defendant Foltz, a DCF licensing counselor, learned that -- before R.S.'s placement -- three foster children were removed from the Shick home because the Shicks could not manage the childrens' emotional and behavioral problems.  Nevertheless, Foltz recommended that the Shicks be re-licensed to provide care for three foster children.

---

[1]What we accept as true for the purposes of this appeal -- that is, the allegations as pleaded by Plaintiffs -- may not be the true facts, or perhaps not all of the true facts, that emerge after discovery.  Our duty at this stage, however, is to accept the Plaintiffs' Third Amended Complaint as true.

[2]The Shicks later adopted R.S.

4

Around May 1998, fourteen-year-old D.C. was placed in the Shick foster home.[3] Defendant Jordan, a DCF employee, was D.C.'s assigned family-services counselor. When she placed D.C. in the Shick home, Jordan specifically knew that D.C. had a history of aggressive sexual behavior toward younger children. She also knew that D.C. had previously suffered sexual abuse by an adult male caretaker.

Around September 1998, a third foster child, J.S., was placed in the Shick home. J.S. was nine when he moved in with the Shicks.

All three Defendants knew that the Shicks worked outside the home full-time and that they allowed foster children R.S. and D.C. to supervise, without adults present, younger foster children. Around January 1999, DCF amended the Shicks' foster-care license and reduced their housing capacity to two foster children. At that time, three foster children -- R.S., D.C., and J.S. -- lived with the Shicks and the Shicks' natural children.

---

[3]R.S. and D.C., both older than Plaintiffs, resided in the Shick home for the entirety of Plaintiffs' stay there.

B.    Plaintiffs' Placement in the Shick Home

Despite amending the Shicks' license, DCF did not remove any foster children from the home. Instead, DCF placed more children with the family. Plaintiffs H.A.L., J.H.L., and S.L.L., children in custody of Florida DCF, were placed in the Shick foster home between January and March 1999.[4]  At the time, H.A.L. was three years old; J.H.L. was five; and S.L.L. was eight.

Defendant Jordan, who had been foster child D.C.'s family-services counselor, was also Plaintiffs' assigned counselor.  Before she placed Plaintiffs in the Shick home, Jordan was repeatedly advised that Plaintiffs may have been sexually abused by their biological parents.  Jordan also knew that D.C. was already living in the Shick home. Because of her previous work with D.C., Jordan was aware of D.C.'s aggressive sexual behavior toward younger children.

In addition, all three Defendants were aware, by virtue of their employment at DCF, of the following things: that child sex-abuse victims are typically more vulnerable to subsequent victimization; that child sex-abuse victims are more likely to perpetrate sex offenses than non-victims; and that "sexually abused

[4]Defendants Foltz and Jones knew at the time of Plaintiffs' placement that the Shicks cared for more children than their license allowed, but neither Defendant acted to ensure adequate parental supervision.

children would sexually assault other children if safeguards and appropriate supervision were not put in place."

Despite this knowledge, Jordan neither implemented a plan to secure Plaintiffs' safety nor conducted a background investigation into the three foster children already living with the Shicks. Because Jordan knew that Plaintiffs may have suffered previous sexual abuse, and because she knew about D.C.'s sexual aggression toward younger children, she knowingly subjected Plaintiffs to a substantial risk of victimization.

C. <u>What Defendants Knew After Plaintiffs Were Placed in the Shick Home</u>

Plaintiffs were placed in the Shick foster home from January to March 1999. Three other foster children -- R.S., D.C., and J.S. -- were already living with the Shicks when Plaintiffs were placed in the home.

In July 1999, eleven-year-old R.S. sexually assaulted J.S. in the Shick home. At that time, all three Plaintiffs lived in or received unsupervised after-school care in the home. The sexual assault was reported to DCF through the Florida Abuse Hotline, and both R.S. and J.S. confirmed that the assault occurred.

Plaintiffs allege that all three Defendants were informed of the child-on-child sexual assault: Defendant-license supervisor Jones was advised of the assault that month;[5] Defendant-licensor Foltz was informed of the incident some time before September 1999; and Defendant-counselor Jordan became aware of the incident "pursuant to Department policy and procedure." Despite Jordan's previous knowledge of D.C.'s aggressive sexual behavior and despite all three Defendants' recent knowledge of R.S.'s sexual assault, no Defendant took steps to guard Plaintiffs' ongoing safety.

Notwithstanding the reported assault, Defendants Foltz and Jones recommended in September 1999 that the Shick home be re-licensed and its foster-child capacity increased. Although Defendants Foltz and Jones knew that D.C. and R.S. -- by then both identified as sexually aggressive children -- provided unsupervised after-school care for Plaintiffs, Defendants recommended re-licensing the Shicks without implementing a plan to guard Plaintiffs' safety.

J.H.L. lived with the Shicks from 7 January 1999 to 28 January 1999. From February to October 1999, he lived in another foster home but received unsupervised after-school care at the Shick home. H.A.L. and S.L.L. continuously

_____

[5]A Child Protection Team investigator also reported to Jones the result of the department's investigation.

resided in the Shick home from March 1999 until May 2000. It was during that time, from 1999 to 2000, that Plaintiffs allegedly suffered child-on-child sexual abuse.

Plaintiffs do not specify a particular date on which their abuse began. Instead, Plaintiffs allege that they were abused by R.S., the Shick's adopted son, and by D.C., another foster child, throughout Plaintiffs' stay in the Shick home. D.C. allegedly assaulted all three Plaintiffs; R.S. allegedly assaulted only H.A.L. and S.L.L.

D.    Defendants' Duties

Plaintiffs contend that Defendants failed to perform Defendants' duties as foster-care workers and supervisors. Plaintiffs contend that Defendants' failure to guard the childrens' safety is actionable considering Defendants' responsibilities as DCF employees. As the family-services counselor who placed Plaintiffs in the Shick home, Defendant Jordan had the authority and responsibility to

> evaluate all reports of child abuse and/or neglect on the subject child and the foster home . . . [t]o investigate all relevant conditions of the home that might affect the child in her caseload or other children in the home . . . [t]o ensure that foster children residing in a foster home were supervised at all times only by adult caregivers . . . [t]o

9

establish[] all necessary plans of care and report all known incidents of sexual aggression occurring in foster homes[,] and [t]o ensure that foster children were not left in dangerous conditions, including being subjected to sexual, emotional, and physical abuse.

As a DCF licensing counselor, Defendant Foltz had the authority and responsibility to, among other things,

> evaluate the foster home file contents regarding open and closed foster home abuse reports and licensing concerns . . . thoroughly assess and investigate reported problems and concerns regarding the foster home to ensure that foster children placed in the foster home were safe and adequately supervised[,] and . . . ensure that foster children were not subjected to elevated risk of harm from child on child sexual abuse.

As a supervisor in the DCF licensing unit, Defendant Jones had the authority and responsibility routinely to assess, among other things, foster homes to guard licensing compliance, to

> ensure that licensing counselors obtain and thoroughly assess and evaluate all law enforcement reports of investigations involving the foster home . . . [to] thoroughly assess and investigate reported problems and concerns regarding the foster home to ensure that foster children placed in the foster home were safe and adequately supervised . . . and [t]o ensure that foster children were not subjected to elevated risk of harm from child on child sexual abuse.

All three Defendants had the "ability, authority and the means" to reject any foster placement posing a "substantial risk of serious harm" to the children, and to recommend removal of the children from any unsafe placement.

10

Plaintiffs claim that Defendants' placing of children in, and re-licensing of, a home where child-on-child sex abuse occurred -- without implementing a plan to guard Plaintiffs' safety -- demonstrates Defendants' deliberate indifference to a known, substantial risk of abuse. Put differently, Defendants' alleged conduct demonstrates Defendants violated Plaintiffs' right to be free from an unreasonable risk of harm while in state custody.

## DISCUSSION

In Taylor v. Ledbetter, 818 F.2d 791 (1987) (en banc), we decided that a foster child can state a 42 U.S.C. § 1983 cause of action under the Fourteenth Amendment if the child is injured after a state employee is deliberately indifferent to a known and substantial risk to the child of serious harm. See Taylor, 818 F.2d at 794–96. In some circumstances, we accept that the constitutional rule identified in Taylor can give a fair warning to foster-care workers.

Although the injury sustained in Taylor was a beating-induced coma and the injury here is sexual abuse and although other unimportant differences exist, we accept that Taylor clearly established decisional law that applied, at the pertinent time, with obvious clarity to Defendants in this case -- assuming that the true facts

11

are the same as those alleged -- and that Defendants had fair warning that their conduct (doing nothing to protect the children, given the circumstances) violated clear federal law. Defendants can therefore be held personally liable for the childrens' injuries. On the alleged facts, no reasonable person in Defendants' place could have believed that, by doing nothing to protect the children, they could carry out their duties consistently with the Constitution.

Defendants contend that they should be afforded qualified immunity because their knowledge of D.C.'s and R.S.'s sexual aggression was not tantamount to knowing subjectively that D.C. and R.S. actually were sexually abusing H.A.L., J.H.L., and S.L.L. Plaintiffs were sexually abused. But in the light of Taylor, the issue here is not whether Defendants actually knew or drew the inference that Plaintiffs were sexually abused: it is whether Defendants -- who could have (among other things) removed Plaintiffs from the Shick home -- actually knew, and were deliberately indifferent to, a substantial risk of Plaintiffs being sexually abused in the Shick home. See Taylor, 818 F.2d at 797.

Given all of the allegations, Plaintiffs sufficiently pleaded Defendants' deliberate indifference to a known, substantial risk of serious harm resulting in serious injury: a violation of clearly established federal law. Plaintiffs allege that Defendant Foltz knew of the Shicks' prior inability to care for foster children and

that no Defendant enforced the Shicks' child-capacity limits. They allege that Defendant Jordan knowingly placed Plaintiffs in a home with D.C., a known sexual aggressor, without implementing a safety plan. Plaintiffs also allege that all three Defendants were informed of the child-on-child sex abuse perpetrated in the Shick home -- yet Defendants then did nothing to protect the other children residing there. Defendants knew that sexual abuse victims -- victims such as D.C. and potentially R.S. and all three Plaintiffs -- were both more likely to be re-victimized and more likely to perpetrate similar offenses. And they knew that Plaintiffs were left with sexually aggressive children -- D.C. and R.S. -- after school and unsupervised by adults. Despite this knowledge, no Defendant -- despite his or her authority to act -- took steps to secure Plaintiffs' safety in the Shick home. Taken together, these factors show that Defendants actually knew, and were deliberately indifferent to, the substantial risk of Plaintiffs being sexually abused in the Shick home. Plaintiffs then were sexually abused in the Shick home. As a result of that deliberate indifference, Defendants, given their duties as DCF employees, violated Plaintiffs' Fourteenth Amendment right to be free from a serious injury flowing from a known, substantial risk of serious harm.

We have written that "deliberate indifference is not as easily inferred or shown from a failure to act" and that a child abused in foster care is "faced with

13

the difficult problem of showing actual knowledge of abuse or that agency personnel deliberately failed to learn what was occurring in the foster home." Taylor, 818 F.2d at 796. We say today that what constitutes a "substantial risk" or "serious injury" might be unclear in some sets of circumstances and whether an official has acted with deliberate indifference (as opposed to, for example, negligence) in given circumstances might also be unclear sometimes; qualified immunity in these instances should apply. But at the pleading stage, Plaintiffs in this case have met their burden: they have pleaded that Defendants did know about child-on-child abuse in the Shick foster home and that Defendants, despite their authority to act, took no steps to guard Plaintiffs from being -- as Plaintiffs in fact came to be -- victims of sex abuse. Accordingly, we affirm the district court's denial of Defendants' motion to dismiss based on qualified immunity.[6]

AFFIRMED.

---

[6]We do not hint about the availability of qualified immunity on summary judgment or by directed verdict or by judgment as a matter of law. Additional or different facts might change the circumstances to the degree that Taylor would not apply to them with obvious clarity and not give fair warning to a defendant that what he or she did would violate the Constitution.