[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12003
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 30, 2010
JOHN LEY
CLERK

D. C. Docket No. 6:10-cv-00185-PCF-DAB

CHARLTON H. FORRESTER, JR.,

Plaintiff-Appellant,

versus

TIMOTHY STANLEY,
CITY OF ORLANDO,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 30, 2010)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Charlton H. Forrester, Jr., appeals the district court's dismissal of his 42

U.S.C. § 1983 claim against Timothy Stanley, a police officer for the City of Orlando, on qualified-immunity grounds.[1] In his complaint, Forrester alleged that Stanley violated his substantive due process rights under the Fourth and Fourteenth Amendments when he commanded his police K-9 to "bite" or "apprehend" one of Forrester's fellow passengers during a traffic stop, which resulted in the K-9's attack of Forrester while he lay prone on the sidewalk in compliance with officers' orders.[2] Forrester claims that his temporary detention pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), placed him in police custody and thus gave rise to a "special relationship" triggering the Fourteenth Amendment's affirmative duty of care and protection. *See DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 198, 109 S. Ct. 998, 1004 (1989) (recognizing "certain limited circumstances" in which "the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals"). By failing to protect him from the K-9 attack, Forrester argues, Stanley failed to safeguard his liberty interest in his personal security during the *Terry*-stop. The district court dismissed Forrester's claim,

---

[1]     Forrester's complaint also alleged state law negligence claims against the City of Orlando and Stanley, which were dismissed alongside his § 1983 claim. Forrester only appeals the district court's dismissal of his federal claim.

[2]     Forrester concedes that because Stanley did not intend to apprehend Forrester with his K-9, he is unable to seek relief under the Fourth Amendment for an excessive use of force.

2

holding that Stanley was entitled to qualified immunity. We agree.

"We review de novo a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003). "The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). "To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority" when the alleged violation occurred. *Id.* at 1325. "If, interpreting the evidence in the light most favorable to the plaintiff, the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original). "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2)

this right was clearly established at the time of the alleged violation." *Id.*

"In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009). "The relevant inquiry to determine whether a right is clearly established is to ask whether it would be 'sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692, 1699 (1999)). The Supreme Court has held that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S __, 129 S. Ct. 808, 818 (2009).

There is no dispute that as a police officer responding to a traffic stop Stanley was acting in his discretionary capacity. Thus, Forrester bears the burden of demonstrating that Stanley violated his clearly established constitutional rights. *Holloman*, 370 F.3d at 1264. Forrester has failed to satisfy this burden.

Forrester cites only three cases to support his argument that at the time of

his temporary detention it was clearly established that Stanley had an affirmative duty to protect him from physical harm during a *Terry*-stop and that Stanley violated this affirmative duty by failing to protect him from a K-9 attack.[3] *See DeShaney*, 489 U.S. 189, 109 S. Ct. 998; *H.A.L. ex rel. Lewis v. Foltz*, 551 F.3d 1227 (11th Cir. 2008); *Lynch v. United States*, 189 F.2d 476 (5th Cir. 1951). None of these cases clearly establishes that the Fourteenth Amendment's duty of protection applies to *Terry*-stops, let alone that Stanley's actions violated such a duty.

*DeShaney* merely establishes that there are some special circumstances, such as incarceration and institutionalization, that trigger an affirmative duty of protection under the Fourteenth Amendment. *Id.* at 198–99, 109 S. Ct. at 1004–05 (discussing the affirmative duty of the State to provide adequate medical care to incarcerated prisoners and to provide involuntarily committed mental patients with such services as are necessary to ensure their reasonable safety). Forrester attempts to seize on some broad language in *DeShaney* stating that "[t]he affirmative duty to protect arises . . . from the limitation which [the State] has imposed on [an individual's] freedom to act on his own behalf," arguing that a

---

[3] Before the district court Forrester also cited *Helling v. McKinney*, 509 U.S. 25, 113 S. Ct. 2475 (1993). He does not rely on this case on appeal.

*Terry*-stop so limits the freedom of those temporarily detained. *Id.* at 200, 489 S. Ct. at 1005–06. Even if *DeShaney* left open this possibility, the Supreme Court refrained from specifically identifying any other circumstances, aside from incarceration and institutionalization, that trigger the Fourteenth Amendment. Our circuit has also reiterated the narrowness of the *DeShaney* opinion, noting that "it appears the only relationships that automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause are custodial relationships, such as those which arise from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves." *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999). *DeShaney* by no means establishes that it would be clear to a reasonable officer in Stanley's position that he had an affirmative duty of care to Forrester or that his conduct violated that duty in contravention of the Fourteenth Amendment. *Oliver*, 586 F.3d at 907.

*Foltz* and *Lynch*, the other two cases cited by Forrester, provide even less support for his argument. In *Foltz*, our circuit denied qualified immunity to employees of the Florida Department of Children and Families where minor children alleged that they failed to prevent child-on-child sexual abuse of the

6

children while involuntarily in the custody of Florida's foster-care system. 551 F.3d at 1232. At the time of the *Foltz* decision, it was already clearly established that a foster child can state a 42 U.S.C. § 1983 cause of action under the Fourteenth Amendment if that child is injured after a state employee is deliberately indifferent to a known and substantial risk to the child of serious harm. *Id.* at 1231. *Foltz* did not interpret or expound upon those circumstances in which an affirmative duty of protection arises under *DeShaney*; it did not involve a *Terry*-stop or even an arrest; and it certainly sheds no light on the question before us: whether at the time of Forrester's detention a reasonable officer would be on notice that Stanley's conduct violated the Fourteenth Amendment.

*Lynch* is equally inapposite. In *Lynch*, the former Fifth Circuit held that police officers violated arrestees' due process right to a trial by jury by turning them over to the Ku Klux Klan for beatings by non-officer third parties. 189 F.2d at 478–79. Not only does *Lynch*, a pre-*DeShaney* case, fail to discuss what circumstances give rise to an affirmative duty of protection under the Fourteenth Amendment; it addressed the procedural due process right to a trial by jury, not the substantive aspects of the due process clause.

In sum, Forrester has failed to cite any caselaw clearly establishing either that a *Terry*-stop triggers the Fourteenth Amendment's affirmative duty of

7

protection or that Stanley violated this duty under the facts contained in his complaint. Accordingly, we agree with the district court that Stanley is entitled to qualified immunity and Forrester's § 1983 claim was due to be dismissed upon Stanley's motion.

AFFIRMED.[4]

---

[4] Appellant's request for oral argument is denied.