**UNITED STATES of America,
Plaintiff,**

v.

**Colin BOONE, Defendant.**

**No. 4:13–cr–139.**

United States District Court,
S.D. Iowa.

Signed June 22, 2015.

---

Barbara S. Bernstein, U.S. Dept of Justice, Washington, DC, Kelly E. Mahoney, United States Attorney's Office, Des Moines, IA, for Plaintiff.

Timothy S. Ross–Boon, Michael Lee Smart, Federal Public Defenders Office, Des Moines, IA, Sioux City, IA, for Defendant.

## SENTENCING MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, District Judge.

Before the Court is the matter of sentencing the Defendant, Colin Boone. This memorandum opinion and order supplements the findings made on the record at the sentencing hearing held June 22, 2015.

### I. PROCEDURAL HISTORY

On December 17, 2013, a grand jury convened in the Southern District of Iowa issued an Indictment charging Defendant with "Unreasonable Use of Force," in violation of 18 U.S.C. § 242. Clerk's No. 2. On May 29, 2014, the grand jury issued a superseding indictment, which added a charge of "Obstruction," in violation of 18 U.S.C. § 1519. Clerk's No. 33.

Trial on the two counts of the superseding indictment commenced on October 27, 2014. Clerk's No. 67. On November 1, 2014, the jury found Defendant "not guilty" of the Obstruction charge. Clerk's No. 85. The jury was unable to reach a unanimous verdict on the Unreasonable Use of Force charge; accordingly, the

Court declared a mistrial. Clerk's Nos. 84, 91. A retrial on the Unreasonable Use of Force charge commenced on March 9, 2015. Clerk's No. 151. The jury found Defendant guilty of the offense on March 13, 2015.[1] Clerk's No. 166.

## II. FACTS

The facts are taken from the trial record and the Pre–Sentence Investigation Report ("PSR"). Where indicated, the Court has either ruled on a disputed fact based on the trial record or determined that doing so is unnecessary to the task of sentencing. *See* Fed.R.Crim.P. 32(i)(3)(b); *United States v. Wiggins,* 104 F.3d 174, 178 (8th Cir.1997) (stating that a sentencing judge who also presided over a Defendant's trial may "base its findings of fact on the trial record"). This case arises out of an incident that occurred in the early morning of February 19, 2013. PSR ¶ 7 (Clerk's No. 182). The PSR describes the incident as follows. City of Des Moines Police Officers Trudy Simonson and Lindsey Kenkel responded to the scene of a one-vehicle accident involving a van. *Id.* They were soon joined by Officers Cody Willis and Tanner Klinge. *Id.* The driver of the van, later identified as Orville Hill, appeared to be unconscious, but as officers approached the vehicle, Hill awoke and unsuccessfully attempted to drive the van

away. *Id.* The officers broke the windows of the van, pulled Hill out, and immediately took him to the ground. *Id.* Defendant, who was employed as a police officer with the City of Des Moines at the time, responded to dispatch calls about the accident. *Id.* ¶ 8. When Defendant arrived on the scene, Officers Willis, Kenkel, and Klinge were holding Hill on the ground, and Officer Simonson was standing nearby, ready to assist. *Id.* ¶ 8. Defendant ran over and delivered a straight kick to Hill's mouth. *Id.*

Defendant objects to portions of PSR paragraphs 7 and 8 that describe what happened when he arrived on the scene. *See* Clerk's No. 179 at 1–2. Defendant maintains that Hill was not under control at the time he arrived at the scene. *Id.* at 1. Defendant also maintains that he delivered a sweep kick rather than a straight kick. *Id.* At trial, Defendant's testimony about the kick conflicted with the testimony of other officers on the scene.

Defendant testified as follows:

At that time when I was coming around, I saw [Hill's] left hand out, kind of related back to my high school days, I want to say. I thought he was trying to push up with it. I know that from wrestling, you don't want to give them a base to push up. So I decided to try to take

---

1. Defendant states in his sentencing brief:

    In the first trial, the government argued [O]fficer Boone intentionally kicked Orville Hill in the head and then lied about it on his arrest incident report. The jury rejected that position and rendered a not guilty verdict on the obstruction count, but was unable to reach a verdict on the excessive use of force count. At retrial, the government took a second bite at the apple and again argued Officer Boone lied on his arrest incident report...."

    Clerk's No. 185 at 2.

    The Court disagrees with Defendant's characterization of the Government's use of admissible evidence as constituting a "second

    bite at the apple." While the Government did argue to the jury that Defendant was dishonest in filling out his arrest incident report, this evidence was highly relevant to the jury's determination of the third essential element of the Unreasonable Use of Force offense— whether Defendant acted willfully. *See* Final Jury Inst. No. 14 (Clerk's No. 162 at 17). The Eighth Circuit has approved the admission of evidence of acquitted conduct when it is relevant to another offense. *See United States v. Vega,* 676 F.3d 708, 719–20 (8th Cir.2012) (finding evidence of prior drug transaction on which defendant was acquitted was admissible to prove defendant's intent in relation to a similar crime).

that arm and knock it out so he couldn't use it to push up. . . . I used a side kick and tried to sweep that arm out from underneath him. . . . I was focused on— I could see his elbow to the shoulder area. That's what I was trying to hit. . . . Hill was laying this way (indicated). His left arm would be right there (indicating), and I came up and I tried to sweep down around from underneath him.

Tr. 706 (Clerk's No. 177 at 56). In contrast, Officer Willis was "[w]ithin feet" of Hill's face, and testified that he saw Defendant kick Hill "[s]traight on." Tr. 123 (Clerk's No. 174 at 123). Officer Kenkel was by Hill's shoulder when Defendant arrived on the scene and she testified: "I seen [sic] [Defendant] do a straight kick" that landed "[i]n [Hill's] facial area." Tr. 156 (Clerk's No. 175 at 23). Officer Simonson was on the ground with Hill and saw Defendant "running" towards her and deliver a "running straight kick to [Hill's] face." Tr. 427 (Clerk's No. 176 at 20). The testimony of the other officers at the scene is consistent, and the Court finds the testimony proves by a preponderance of the evidence that Defendant delivered a straight kick to Hill's facial area, not a sweep kick to his shoulder area.

The officers also testified that they were working on getting Hill into handcuffs, and, at the time Defendant arrived on the scene, no additional force was necessary besides the force they were already applying with their hands and body weight on top of Hill. For example, Officer Willis testified that he had Hill's right arm under control, that Hill could not get up, and that the force needed to get Hill into handcuffs included "[t]he force he was currently exerting," which included pressure from his knee and holding Hill's right arm. Tr. 77–78 (Clerk's No. 174 at 78). Officer Kenkel testified that Hill was "moving around" but that the force needed to get Hill into handcuffs was "hands on" force, including

"physically holding him down." Tr. 154–55 (Clerk's No. 175 at 21–22). Officer Simonson testified that after Hill was face down on the ground she was not worried that he could get up. Tr. 425 (Clerk's No. 176 at 18). Officer Klinge testified that the level of force needed to control Hill was "[j]ust our hands." Tr. 499–500 (Clerk's No. 176 at 92–93). The Court finds the testimony of Willis, Kenkel, Simonson, and Klinge credible and thus finds by a preponderance of the evidence that no additional force was needed to gain control of Hill at the time Defendant arrived on the scene.

Finally, Defendant objects to the PSR statement that after Hill was in handcuffs and face down on the ground, Defendant "put his foot on top of Hill's head." PSR ¶ 8. Defendant instead states that Hill was raising his head and Defendant "placed the toe of his foot and pushed [Hill's] head back down." The Court finds that this difference is immaterial for purposes of sentencing. Similarly, the Court finds it is unnecessary to resolve the dispute over whether Officer Kenkel was thrown back by the force of Defendant's kick.

Defendant also disputes paragraph 9 of the PSR, which describes Hill's injuries. Defendant disputes that officers "observed blood pour from Hill's mouth and pool on the ground beneath his face." See Clerk's No. 179 at 2; PSR ¶ 9. The Court finds this dispute immaterial for purposes of sentencing. Defendant does not dispute that, as a result of the kick, two of Hill's teeth were broken off at the gums and a third was knocked loose and had to be removed. PSR ¶ 9. Hill also undisputedly suffered a laceration above his eye that required stitches. *Id.* However, Defendant disputes that Hill suffered a fractured nose. Clerk's No. 179 at 2; PSR ¶ 9 ("Hill also suffered a broken nose."). The emergency room doctor that treated Hill testified that the bridge of Hill's nose was

swollen, and a CAT scan showed his nose was recently fractured, although the doctor could not say with certainty that the fracture had occurred that evening. Tr. 238, 241 (Clerk's No. 175 at 105, 108). The doctor also testified that "when the nose is impacted, you often times get orbital fractures. You can also get fractures up here (indicating) when you have the teeth avulsed that way." Tr. 237 (Clerk's No. 175 at 104). She further stated that Hill's injuries were consistent with a kick and that "[t]he area in which the force hit was in the mouth, pretty specifically mouth and mid face region." Tr. 243 (Clerk's No. 175 at 101). Based on this testimony, the Court finds that it has been proved by a preponderance of the evidence that Defendant's kick caused Hill's fractured nose.

Next, Defendant disputes PSR paragraphs 10–13, which describe conversations Defendant had after the kick occurred. According to the PSR, Defendant asked Officer Willis if he "was good" or "if he needed anything," which Officer Willis interpreted as an inquiry about whether or not Defendant should fill out an Arrest Incident Report. PSR ¶ 10. Defendant asserts that it was improper for Officer Willis to speculate as to Defendant's subjective intent. The Court finds that it is unnecessary to resolve this dispute for purposes of sentencing. The PSR also states that Defendant spoke with Officers Simonson and Kenkel, and stated "I just tried to knock him out a bit." PSR ¶ 11. Both officers testified that Defendant made the statement, and the Court finds their testimony credible; the statement is proved by a preponderance of the evidence. Tr. 165, 441 (Clerk's Nos. 174 at 32, 175 at 43). Next, the PSR states that Defendant told Officer Ben Idhe that he kicked Hill in the head. PSR ¶ 12. Defendant disputes the characterization of his statement, and maintains that he told Officer Idhe he "may" have kicked Hill in the head so Officer Idhe could take that infor-mation into account when examining Hill. Clerk's No. 179 at 2. The Court finds it unnecessary to resolve this factual dispute for purposes of sentencing. Finally, the PSR states that Defendant told his then-fiancée, Angela Frye, that he "put [his] bootlaces across a guy's face," that he "took a ten foot running start" and that blood "gushed everywhere" and Hill "spit teeth out." PSR ¶ 13. Frye provided a recorded statement to the Des Moines Police Department Office of Professional Standards detailing her conversation with Defendant shortly after the incident occurred, and also testified at trial. *See* Tr. 374–75 (Clerk's No. 175 at 241–42). The Court finds the testimony credible and that these statements are proved by a preponderance of the evidence. The Court finds it unnecessary to resolve the dispute about a message Frye posted to Facebook post after her conversation with Defendant.

Finally, Defendant objects to PSR paragraphs 15 and 16, which summarize Defendant's testimony. The Court finds that paragraphs 15 and 16 accurately state Defendant's trial testimony. Further, Defendant does not actually claim that he did not testify to the statements reflected in the PSR. *See* Clerk's No. 179 at 3–4. Defendant's objections to paragraphs 18, 26, 27, and 30, involving the enhancement for obstruction of justice, will be discussed separately below.

## III. LAW AND ANALYSIS

■ When imposing a sentence, this Court is not bound by the Sentencing Guidelines, but "must consult those Guidelines and take them into account." *United States v. Booker*, 543 U.S. 220, 264, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable [Sentencing] Guidelines range."

*Gall v. United States,* 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The Court should then consider all of the factors enumerated in 18 U.S.C. § 3553(a) and "make an individualized assessment based on the facts presented." *Id.* Section 3553(a) instructs the district courts to " 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.' " *Kimbrough v. United States,* 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (quoting 18 U.S.C. § 3553(a)). The Court should also consider " 'the nature and circumstance of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established by the Guidelines,' 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.' " *Id.* (quoting 18 U.S.C. § 3553(a)). The statute "requires a court to give respectful consideration to the Guidelines," but also " 'permits the court to tailor the sentence in light of other statutory concerns as well.' " *Id.*

(quoting *Booker,* 543 U.S. at 245–46, 125 S.Ct. 738). The Court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall,* 552 U.S. at 50, 128 S.Ct. 586.

### A. Advisory Guideline Calculation

#### 1. Obstruction of justice enhancement.

■ Defendant objects to the Government's position that a two-level enhancement for obstruction of justice applies in this case. The enhancement applies:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1. The Government argues that the enhancement applies because Defendant committed perjury during the trial, specifically, Defendant testified that he delivered a sweep kick towards Hill's shoulder rather than a straight kick to Hill's face.[2] Clerk's No. 184 at 11.

■ "Committing perjury at trial constitutes an obstruction of justice within the

---

**2.** The PSR also cites, as a basis for the enhancement, Defendant's testimony that he first noticed Hill's facial injuries when Hill was in the ambulance, despite video of the scene showing Defendant bending over Hill right after the kick occurred. But the Government does not advance this basis for the enhancement in its Sentencing Memorandum, and the Court concludes that even if it had, Defendant's testimony does not support a finding of perjury. Defendant's testimony about when he first noticed the injuries is not entirely clear, and supports a conclusion that Defendant was confused or could not remember exactly what he saw, at least to the same extent that it supports a conclusion that he

willfully lied. *See* Tr. 727 (Clerk's No. 177 at 77) ("I noticed when they rolled him over ... that there was some blood on his face."); Tr. 728–29 (Clerk's No. 177 at 78–79) ("[I] walked down to the ambulance ... I noticed that he had a gash or a slit on his eyebrow, and my first thought was, wow, that looks like maybe something like boot laces or the side of your boot may cause, and I knew that I had struck him up in the upper shoulder, and I started to wonder if maybe I hit him in the head, too."); Tr. 783 (Clerk's No. 177 at 133) (testifying that while Hill was on the ground after being handcuffed he "saw that [Hill] had ... a facial laceration").

meaning of § 3C1.1. Because a finding of obstruction results in an increase in a defendant's sentence, the government bears the burden of proving the facts necessary to support the finding by a preponderance of the evidence." *United States v. Flores,* 362 F.3d 1030, 1037 (8th Cir.2004) (internal citations omitted). "The sentencing court cannot give the upward departure simply because a defendant testifies on his own behalf and the jury disbelieves him." *Id.* (internal quotation omitted). "A witness testifying under oath or affirmation [commits perjury] if [ ]he gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (internal quotation and citation omitted); *see also* U.S.S.G. § 3.3C1.1, cmt. 2. A defendant's "testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent." *Dunnigan,* 507 U.S. at 94, 113 S.Ct. 1111. "[I]f a defendant objects to a sentence enhancement resulting from [his] trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same." *Id.* "[T]he trial court must make findings to support all the elements of a perjury violation." *Id.* at 97, 113 S.Ct. 1111.

The Government asserts that Defendant's testimony that he delivered a sweep kick rather than a straight kick constituted perjury. As summarized above, Defendant consistently maintained that he delivered a sweep kick towards Hill's shoulder area despite the other officers' testimony that they witnessed Defendant deliver a straight kick to Hill's face. This testimony is material because it goes to willfulness. *See* 18 U.S.C. § 242 (requiring the deprivation of rights to be willful). Although

the Court is persuaded that a preponderance of the evidence shows that Defendant did in fact deliver a straight kick to Hill's face, such a conclusion does not equate to a finding that Defendant willfully intended to provide false testimony. Defendant does not deny that he kicked Hill, nor does he deny that a straight kick to Hill's face would have been an unreasonable use of force. Rather, Defendant's subjective memory of what occurred that evening was different than the other officers on the scene. That makes this case different from others where the enhancement was applied to defendants who completely denied knowledge of the crimes for which they were accused. *See Dunnigan,* 507 U.S. at 90, 113 S.Ct. 1111 (defendant denied ever possessing or distributing cocaine); *United States v. Esparza,* 291 F.3d 1052, 1056 (8th Cir.2002) (defendant testified that he did not know there were drugs in his trailer); *United States v. Pena,* 67 F.3d 153, 157 (8th Cir.1995) (defendant denied knowledge or involvement in drug trafficking). The Court finds it equally as likely as not that Defendant truly believes he attempted to deliver a sweep kick on the night in question. Further, it is conceivable that the jury may have believed Defendant's testimony and still found that a sweep kick constituted excessive use of force under the circumstances of the case. *See Dunnigan,* 507 U.S. at 94, 113 S.Ct. 1111 ("[Defendant's] testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent.").

The Government also points to inconsistencies between Defendant's testimony and the testimony of the other officers on the scene regarding statements that tend to prove or disprove the willfulness of Defendant's actions that evening. *See* Clerk's No. 184 at 11. First, the Government asserts that Defendant's testimony that Hill's arm was out and that Hill was

attempting to push up was false. That assertion appears to be based on Officer Klinge's testimony at the first trial that Hill's hand was tucked underneath his chest. *See* Clerk's No. 95 at 194 (First Trial Tr.). But Officer Klinge also testified that he *couldn't recall whether Hill's* hand was ever on the ground, or whether Hill had ever pushed up on his hand. *Id.* at 195. Next, the Government asserts that Defendant falsely testified that he did not tell Officers Simonson and Kenkel that he was trying to "knock [Hill] out a little." But Defendant did *not deny making the* statement, rather Defendant testified that he didn't think he ever said that, and also testified that he didn't know, and didn't remember the conversation. Tr. 802 (Clerk's No. 177 at 152). The Government also argues that Defendant mischaracterizes his conversation with Officer Idhe by contending that he told Officer Idhe he "may" have kicked Hill in the head, while Officer Idhe testified that Defendant told him he *did* kick Hill in the head. *See* Clerk's No. 184 at 11. Finally, the Government argues that Defendant falsely denied that he made certain statements to his then-fiancée Angela Frye. But Defendant conceded at trial that it was possible he made the statements Frye attributed to him, but that he couldn't remember saying them. Tr. 804 (Clerk's No. 177 at 154). The Court finds that none of the inconsistencies identified by the Government support a conclusion by a preponderance of the evidence that Defendant willfully lied under oath. For all the foregoing reasons, the Court declines to impose a two-level enhancement for obstruction of justice.

### 2. *Guideline calculation.*

The Guideline for 18 U.S.C. § 242 offenses, including those involving individual rights, is found in U.S.S.G. § 2H1.1. Section 2H1.1 instructs the Court to apply the base offense level for the underlying offense, here, aggravated assault. The base offense level for aggravated assault is 14. U.S.S.G. § 2A2.2(a). Because the victim sustained an injury between bodily injury and serious bodily injury, the offense level is increased by 4 levels. U.S.S.G. § 2A2.2(b)(3)(D). Because Defendant committed the offense under the color of law, 6 levels are added. U.S.S.G. § 2H1.1(b)(1). Since the victim was physically restrained in the course of the offense, 2 levels are added. U.S.S.G. § 3A1.3. The total offense level is, therefore, 26. As discussed above, the Court declines to apply the obstruction of justice enhancement. The Defendant has no prior criminal history, resulting in a criminal history category of I. The resulting advisory sentencing range of imprisonment is 63–78 months.

### B. *3553(a) Factors*

■ For the reasons discussed below, the Court finds that a Guideline sentence is appropriate in this case. Specifically, the Court finds that a sentence at the bottom of the Guideline range, 63 months, is "sufficient but not greater than necessary."

### 1. *Nature and circumstances of the offense.*

The history of 18 U.S.C. § 242 can be traced back to Reconstruction following the Civil War. *See* Hon. Paul J. Watford, *Screws v. United States and the Birth of Federal Civil Rights Enforcement*, 98 MARQ. L. REV. 465, 470 (2014). At the time, violence against African Americans in the South was ubiquitous and Congress passed a series of statutes between 1866 and 1875 aiming to enforce the rights conferred by the Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution. *Id.* In December 1865, just a few months after the Thirteenth Amendment was ratified, Congress enacted the Civil Rights Act of 1866 which

"included § 242 in its originally narrow form." *United States v. Price,* 383 U.S. 787, 804, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Shortly after the ratification of the Fifteenth Amendment, Congress enacted the Enforcement Act of 1870, which contained an early version of 18 U.S.C. § 241,[3] and a re-enactment of the 1866 Civil Rights Act's version of § 242. *Id.* at 802, 86 S.Ct. 1152. The two statutes have long been recognized as "companion sections designed for the protection of great rights won after the Nation's most critical internal conflict." *United States v. Williams,* 341 U.S. 70, 87, 71 S.Ct. 581, 95 L.Ed. 758 (1951) (Douglas, J., dissenting).

Today, § 242 preserves the federal government's power to prosecute violations of citizens' civil rights that occur under color of law. *See* 18 U.S.C. § 242; Watford at 483. Pertinent here, § 242 protects an individual's right to be free from the unreasonable or excessive use of force by law enforcement. "[I]t is plain that basic to the concept of due process of law in a criminal case is a trial—a trial in a court of law, not a trial by ordeal." *Screws v. United States,* 325 U.S. 91, 106, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). "A prisoner unlawfully beaten by an arresting officer is denied the right of due process of law and also the right of equal protection of the laws." *Lynch v. United States,* 189 F.2d 476, 479 (5th Cir.1951). The seriousness of section 242 crimes simply cannot be understated, as they harm far more than individual victims; society as a whole is harmed when those entrusted to protect the public and enforce the laws turn to lawlessness themselves. *See United States v. McQueen,* 727 F.3d 1144, 1157 (11th Cir.2013) (finding a violation of § 241 to be a "particularly serious offense," and stating that the "evils against which this civil rights statute is directed especially include correctional officers who flagrantly beat inmates (and young ones at that) placed by the law in their charge.").[4]

In addition, the specific facts of this case are troubling, particularly in that Defendant committed the act in front of his fellow officers, showing a brazen disrespect for the law. Defendant's act, although only a single kick, caused serious injury to Hill, and was potentially deadly. The Court agrees with the Government that the offense damages the reputation of police officers generally, and specifically the Des Moines Police Department and "impugns the credibility and work of the hundreds of upstanding officers who serve with the department." *See* Clerk's No. 184 at 12. A Guideline sentence accounts for the violent nature of the crime and the seriousness of civil rights violations by a law enforcement officer.

2. *History and characteristics of the defendant.*

Defendant is 39 years old with no history of substance abuse or mental health issues. PSR ¶ 39. He grew up in a stable, middle-class environment, and has the support of his parents and two brothers. *Id.* ¶¶ 38–45. Defendant possesses

---

**3.** 18 U.S.C. § 241 makes it a crime for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person ... in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same."

**4.** Though *McQueen* concerned a violation of § 241, the Court finds that the similar history and purpose of the two statutes makes the analysis equally applicable to violations of § 242. Moreover, while the conduct in *McQueen* was arguably more egregious than that here at issue, "the evils against which the civil rights statute is directed" undoubtedly encompass Defendant's conduct toward Orville Hill.

an associate of applied science degree in professional studies from Metro Community College in Omaha, and has completed additional college coursework. *Id.* ¶ 61. In 1997, Defendant first entered the field of law enforcement, training police dogs and training officers how to work with them. Def.'s Allocution Statement. Defendant later attended the police academy and spent a year working as a Capitol Police officer. *Id.* He was eventually hired by the Des Moines Police Department ("DMPD"), attended the police academy again, and commenced work as a Des Moines Police Officer in 2000. *Id.* During his approximately 14 years with the DMPD, Defendant attended a great deal of training, received several promotions, and became an expert in accident reconstruction, OWI enforcement, RADAR/LIDAR, and drug-impaired driving enforcement. *Id.* Defendant also became an instructor for several police academy courses and received various awards and commendations for his work, including a Medal of Valor for pulling accident victims from a burning car. *Id.* Since his termination from the DMPD, Defendant moved to South Dakota to be closer to his family, and has been employed as an emergency medical technician, serving a high poverty area. *Id.;* PSR ¶¶ 50, 63. Defendant also volunteers as an official for several youth sports programs, and has done an admirable job improving his own health, including losing nearly 200 pounds and participating in marathons and triathlons. Def.'s Allocution Statement.

The record also reflects by a preponderance of the evidence, however, that the use of force against Orville Hill was likely not the first time Defendant used unreasonable force against an arrestee while working as a Des Moines police officer. The evidence at trial showed that Defendant used force on an arrestee inside a Des Moines Police Station and then attempted to cover up the incident with another officer. Tr. 291–315 (Clerk's No. 175 at 157–81) (Testimony of Officer Chris Latcham). That arrestee sued Defendant and the other officer, alleging that Defendant used excessive force against her.[5] Tr. 343 (Clerk's No. 175 at 210).

The Court in general commends Defendant for his extensive public service and accomplishments. It also acknowledges, as Defendant points out, that this "case is about less than 15 seconds in a 14–year law enforcement career" and that it "involved a single strike." Clerk's No. 185 at 9 (Def.'s Sentencing Br.). Sadly, it is not uncommon in the criminal justice system for a few seconds of poor judgment in an otherwise productive and mostly law-abiding life to carry severe consequences. No doubt, the consequences that Defendant has experienced already, including termination from his job with the DMPD, a felony conviction, and a corresponding loss of civic rights, are severe. However, the injury that Defendant inflicted on Orville Hill was also severe, and like Defendant, Orville Hill will live with the consequences of Defendant's actions for the rest of his life. Given that Defendant's sworn duty was to protect and serve, the Court likewise cannot ignore the pall that his conduct has cast over not just himself, but law enforcement officers in general. After careful consideration, the Court concludes that Defendant's history and characteristics, while laudable in general, are not

---

5. The Court believes this evidence bolsters the appropriateness of a sentence within the advisory guideline range, as it tends to show that the Defendant's assault against Orville Hill was not an isolated event, but rather part of a pattern of unlawful behavior directed towards arrestees. The Court notes, however, that it would still impose a sentence within the advisory guideline even without consideration of Defendant's "other bad acts."

particularly unusual for a law enforcement officer and do not, when considered in conjunction with the other § 3553(a) factors, warrant a departure or variance from the advisory guideline range under the particular facts and circumstances of this case.

3. *Need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed training or treatment.*

Defendant is not a risk to the public as he no longer serves in a law enforcement role, nor is there a need for the sentence to address training or treatment needs. But the Court believes a Guideline sentence in this case is appropriate to reflect the seriousness of the crime and to act as just punishment. Indeed, the legislative history of § 3553(a) recognizes that the purpose of the "just punishment" provision is "essentially a 'just deserts' concept ... it is another way of saying that the sentence should reflect the gravity of the defendant's conduct." *McQueen*, 727 F.3d at 1157 (quoting S.Rep. No. 98–225, at 75–76 (1983), 1984 U.S.C.C.A.N. 3182, 3258–59). "From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense." *Id.* (quoting S.Rep. No. 98–225, at 75–76, 1984 U.S.C.C.A.N. at 3258–59).

In addition, the Court considers deterrence, especially general deterrence, to be particularly important in this case. "General deterrence is 'one of the key purposes of sentencing,'" and careful consideration of it in fashioning a sentence is "especially compelling in the context of officials abus-

ing their power." *United States v. Hooper*, 566 Fed.Appx. 771 (11th Cir.2014) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191–92 (11th Cir.2008) and citing *McQueen*, 727 F.3d at 1157–58). As Justice Brandeis stated nearly 90 years ago:

Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.

*Olmstead v. United States*, 277 U.S. 438, 468, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). A Guideline sentence in this case will make explicit that the excessive use of force by law enforcement is a serious civil rights violation that simply will not be tolerated.

4. *Remaining statutory considerations.*

The Court has also considered the need to avoid unwanted sentencing disparities among similarly situated offenders. Neither party has argued that a Guideline sentence in this case would produce such a disparity. Generally, while not mandatory, a Guideline sentence helps promote uniformity and fairness in sentencing. *See Gall*, 552 U.S. at 54, 128 S.Ct. 586

("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."); *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir.2009) ("The best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly."). Accordingly, the Court concludes that a Guideline sentence serves to avoid unwanted sentencing disparities.

## IV. CONCLUSION

After considering all the statutory factors, the Court finds a sentence of 63 months, the bottom of the applicable Guideline range, to be "sufficient but not greater than necessary." Following the term of incarceration, Defendant shall be on supervised release, subject to the special conditions detailed in the judgment, for a term of one year. Defendant must also pay the required $100 to the crime victims' fund. The Court is unable to enter an order of restitution at this time. Pursuant to the agreement at the sentencing hearing, the Government shall have 30 days to provide supporting documentation for the victim's restitution request. The Defendant shall have 14 days to enter a response. If necessary, a hearing will be set at that time in accordance with 18 U.S.C. § 3664(d)(5). The Court declines to order any additional fine or penalty.

IT IS SO ORDERED.